IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KORIE MCAFEE-TRUJILLO,

       Plaintiff,

v.                                  No.

UNITED STATES DEPARTMENT OF EDUCATION,
HIGHER EDUCATION LOAN AUTHORITY OF THE
STATE OF MISSOURI d/b/a MOHELA,
EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC., and
TRANS UNION, LLC,

       Defendants.

## COMPLAINT FOR DAMAGES AND JURY DEMAND

1. Plaintiff Korie McAfee-Trujillo is a nurse living in Albuquerque, New Mexico.

2. Ms. McAfee took out federal student loans to finance her nursing education.

3. Ms. McAfee worked to save extra money and pay off her student loans early with a lump sum payment of $14,613.

4. The United States Department of Education, by and through student loan servicer MOHELA, failed to properly credit Plaintiff's loan accounts with her payment, showing she still owed thousands of dollars on accounts that should have shown $0 balances.

5. Even after MOHELA admitted to its mistake and despite Plaintiff's repeated requests, MOHELA refuses to correct Plaintiff's account balances.

6. MOHELA has damaged Ms. McAfee's credit reputation by reporting the false and factually inaccurate information to Equifax, Experian, and Trans Union.

7. Defendants' callous disregard for Ms. McAfee's financial well-being caused her significant injuries.

8. Plaintiff brings claims against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

**Parties**

9. Plaintiff Korie McAfee-Trujillo is a natural person residing in Albuquerque, New Mexico.

10. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

11. Defendant United States Department of Education ("DOE") is an agency of the federal government.

12. Among other things, DOE makes federal student loans, including to numerous New Mexicans.

13. DOE is a "person" as defined by 15 U.S.C. § 1681a(b).

14. DOE is a "furnisher of information" as defined by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b).

15. DOE regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about consumer transactions.

16. Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA"), services federal student loans owned by DOE, acting in all respects as the agent of DOE as to these loans, including numerous loans made to New Mexicans.

17. DOE is vicariously liable for the actions of MOHELA.

18. MOHELA is a "person" as defined by 15 U.S.C. § 1681a(b).

19. MOHELA is a "furnisher of information" as defined by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b).

2

20.    MOHELA regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about consumer transactions.

21.    Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company based in Atlanta, Georgia.

22.    Equifax operates nationwide as a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

23.    Defendant Experian Information Solutions, Inc. ("Experian") is a corporation based in Costa Mesa, California.

24.    Experian operates nationwide as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). Experian assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

25.    Defendant Trans Union, LLC ("Trans Union") is a limited liability company based in Chicago, Illinois.

26.    Trans Union operates nationwide as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).  Trans Union assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

**Jurisdiction and Venue**

27. This Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p, and under 28 U.S.C. §§ 1331 and 1337.

28. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this Complaint occurred within the district.

**Facts**

29. Plaintiff Korie McAfee-Trujillo is a nurse.

30. Over the past decade, she pursued a bachelor of science degree in nursing from the University of New Mexico and a master of science degree in nursing from the University of Texas at Arlington.

31. To pay for her education, she took out five student loans ("the Loans") through DOE.

32. DOE, the creditor, engaged MOHELA as its servicer with respect to the Loans.

33. DOE, through MOHELA, submits student loan data to consumer reporting agencies on a monthly basis.

34. DOE requires the furnishing of information about federal student loans to CRAs and controls the manner and content through its agents, including MOHELA.

35. DOE knew and intended that MOHELA would carry out credit reporting on its behalf, including with respect to Plaintiff's loans.

36. Plaintiff always made her loan payments on time.

37. In addition, Plaintiff saved extra money in order to make a lump sum payment to pay off the Loans.

38. On October 21, 2023, Plaintiff submitted a payment of $14,613 to MOHELA.

39. The payment was adequate to pay off all of the Loans in full.

40. MOHELA received the payment.

41. MOHELA failed to credit the payment properly to pay off all of Plaintiff's student loans.

42. Instead, MOHELA inexplicably applied the entire payment to one of the loan accounts.

43. Although the payment was far more than enough to pay off that loan, MOHELA did not refund any money to Plaintiff.

44. Instead, it simply recorded that individual loan as having a $0 balance.

45. MOHELA continued to report the other four accounts as having the same balances as before.

46. DOE, acting through MOHELA, reported the factually inaccurate balances ("the MOHELA Credit Reports") to Equifax, Experian, and Trans Union (collectively "the CRAs").

47. The inaccurate MOHELA Credit Reports made it appear that Plaintiff had a much higher amount of debt than was actually true.

48. The inaccurate MOHELA Credit Reports made it appear that Plaintiff owed MOHELA $12,036, when she in fact owed nothing on the MOHELA accounts listed on the credit reports.

49. Beginning in February, 2024, Plaintiff began contacting MOHELA repeatedly to correct this issue.

50. MOHELA employees acknowledged the mistake but seemed incapable or unwilling to correct it.

51.  On September 2, 2024, a MOHELA employee wrote Plaintiff an e-mail stating that the payment would be "typically automatically reapplied across the remaining balances of your loans," but this process was "interrupted" by the "loan transfer process," and, therefore, Plaintiff's payment was incorrectly applied only to the most recently disbursed loan. The employee wrote that the most recently disbursed loan showed a $0 balance when it "should have a credit balance in the amount of $9,095.38." *See* Exhibit 1.

52.  The employee promised that the account would be "rebuilt" to properly apply the payment across all of Plaintiff's accounts to reduce the balances to zero.

53.  Nothing happened.

54.  In late 2025, Plaintiff disputed the negative and false MOHELA Credit Reports with the CRAs.

55.  On or about August 29, 2025, Plaintiff sent dispute letters ("the Dispute Letters") to each of the CRAs disputing the reporting on her credit report.

56.  Exhibits 2, 3, and 4 are true and accurate copies of the Dispute Letters (redacted as to confidential personal information).

57.  Equifax, Experian, and Trans Union received the Dispute Letters.

58.  The Dispute Letters fully identified Plaintiff and the MOHELA Credit Reports, contested MOHELA's negative and false reporting, and asked Equifax, Experian, and Trans Union to conduct a reinvestigation, pursuant to 15 U.S.C. § 1681i(a).

59.  Plaintiff enclosed with the Dispute Letters proof that MOHELA's credit reporting was factually inaccurate, including proof of payment and the e-mail in which MOHELA acknowledged the inaccuracy of the credit reporting.

60. Each of the CRAs willfully or negligently refused to conduct reinvestigations of the MOHELA Credit Reports or to correct the inaccurate credit reporting, as required by the FCRA, 15 U.S.C. § 1681i(a).

61. Each CRA responded to Plaintiff in late September, 2025, and stated that it would continue to report the factually inaccurate information in the MOHELA Credit Reports.

62. The Dispute Letters had been provided by Plaintiff and the CRAs to MOHELA, the agent of DOE.

63. DOE and MOHELA willfully or negligently failed to conduct a reinvestigation and instead confirmed the validity of the MOHELA Credit Reports, contrary to the FCRA, 15 U.S.C. §§ 1681i(a) and 1681s-2(b).

64. The willfulness of Defendants' failure to reinvestigate is evident based on Plaintiff's Dispute Letters.  Plaintiff provided indisputable evidence, *including an e-mail from MOHELA itself*, stating that Plaintiff's payment should have been automatically applied across the remaining account balances, resulting in $0 balances for each account.

65. DOE and MOHELA did not provide, and the CRAs did not receive, any information confirming current credit reporting other than—at most—a perfunctory and unsupported confirmation of the charge from MOHELA.

66. DOE and MOHELA did not provide, and the CRAs did not receive, any information or document that would contradict the factual information reflected in the Dispute Letters.

67. DOE, through its agent MOHELA, continued to make derogatory reports to Equifax, Experian, and Trans Union, and the CRAs continued to include this false information in Plaintiff's consumer reports.

68. The false information in the Equifax, Experian, and Trans Union credit reports was derogatory to Plaintiff on its face: it indicated that she carried significantly higher loan balances than was actually the case.

69. In other words, the false information suggests a debt-to-income ratio that is much higher than is accurate, impacting Plaintiff's ability to qualify for credit.

70. After Plaintiff submitted her disputes, the CRAs published the false information about Plaintiff in consumer reports that it provided to Plaintiff's existing and prospective creditors, including, but not limited to, Capital One Bank.

71. On December 30, 2025, Plaintiff applied for a Capital One credit card.

72. The CRAs provided Defendants' false and defamatory credit reports to Capital One in connection with the application.

73. Plaintiff was approved for credit.

74. However, the Credit Score Disclosure Notice issued to Plaintiff with the approval letter states, "[g]enerally, the higher your [credit] score, the more likely you are to be offered better credit terms."

75. Upon information and belief, the credit terms that Capital One Bank offered Plaintiff were worse than the terms it would have offered Plaintiff if it were not for the false information published by Defendants.

76. Plaintiff was damaged by Defendants' misconduct.

77. As a result of the false information on her credit report, Plaintiff's credit reputation was injured.

78. Plaintiff lost credit opportunities as a result of Defendants' conduct.

79. Plaintiff lost time and financial resources as a result of Defendants' conduct because she had to engage in the many steps required to dispute inaccurate credit information, including obtaining a copy of her credit report; reviewing her credit report; preparing the Dispute Letters and corresponding exhibits; printing the letters; placing them in envelopes; and paying for postage.

80. Defendants' conduct caused aggravation, frustration, humiliation, and other emotional distress to Plaintiff, resulting in physical and emotional symptoms.

81. Defendants' conduct was intentional and in reckless disregard of their duties under the FCRA, and carried a high risk of harm.

82. Upon information and belief, Defendants' actions are part of a pattern of similar misconduct, justifying an award of punitive damages.

## Jury Demand

83. Plaintiff hereby demands trial by a six-person jury on all issues so triable.

## First Claim for Relief: Violations of the FCRA by DOE and MOHELA

84. Defendants DOE and MOHELA failed to review and consider all relevant information submitted by Plaintiff.

85. Defendants failed to conduct a genuine and reasonable reinvestigation in response to Plaintiff's dispute.

86. Defendants failed to report to Equifax, Experian, and Trans Union that the information they reported about the account is inaccurate.

87. Defendants persisted in reporting information that they knew or should have known to be inaccurate and damaging.

88. Defendants' actions are willful or, in the alternative, negligent, violations of the FCRA, including 15 U.S.C. §§ 1681s-2(b) and 1681i.

89. Plaintiff is entitled to actual damages, statutory damages and punitive damages, costs and reasonable attorney fees.  15 U.S.C. §§ 1681n and 1681o.

### Second Claim for Relief: Violations of the FCRA by the CRAs

90. Defendants Equifax, Experian, and Trans Union failed to review and consider all relevant information submitted by Plaintiff.

91. Defendants failed to conduct a genuine and reasonable reinvestigation in response to Plaintiff's dispute.

92. Defendants persisted in reporting information that they knew or should have known to be inaccurate and damaging.

93. Defendants failed to delete inaccurate information from Plaintiff's credit report.

94. Defendant's actions are willful or, in the alternative, negligent, violations of the FCRA, including 15 U.S.C. §§ 1681i and 1681e.

95. Plaintiff is entitled to actual damages, statutory damages and punitive damages, costs and reasonable attorney fees.  15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff prays that this Court:

A. Award actual, statutory, and punitive damages as set forth herein;

B. Order declaratory relief that Plaintiff does not owe the amounts asserted in the factually inaccurate credit reports;

C. Award costs and attorney's fees; and

D. Award such other relief as this Court deems just.

Respectfully submitted,

10

FEFERMAN, WARREN & MATTISON

*/s/ Nicholas H. Mattison*
Nicholas H. Mattison
Elisa Cibils
300 Central Avenue S.W., Suite 2000 West
Albuquerque, N.M. 87102
(505) 243-7773
(505) 243-6663 fax
nmattison@nmconsumerwarriors.com