**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KORIE MCAFEE-TRUJILLO,

Plaintiff,

v. No. 1:26-cv-00728-KG-JFR

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Compel Arbitration ("Motion to Compel Arbitration"), Doc. 62; Defendant's Motion for a Protective Order and Stay of Discovery Pending Resolution of Experian's Motion to Compel Arbitration ("Motion for Protective Order"), Doc. 63; Plaintiff Korie McAfee-Trujillo's Motion to Strike Experian Information Solutions, Inc.'s Motion to Compel Arbitration ("Motion to Strike"), Doc. 67; and Plaintiff's Motion to Stay Briefing on Experian Information Solutions, Inc.'s Motion to Compel Arbitration to Allow Limited Discovery ("Motion to Stay"), Doc. 68. For the reasons below, Experian's Motion to Compel Arbitration is GRANTED and its Motion for Protective Order is DENIED as moot. Plaintiff's Motion to Strike and Motion to Stay are DENIED.

## *I. Background*

Plaintiff filed the instant action on March 10, 2026, alleging Experian willfully or negligently violated 15 U.S.C. Sections 1681i and 1681e of the Fair Credit Reporting Act

("FCRA"), by failing to investigate and correct a discrepancy on her credit report.[1] *See* Doc. 1 ¶¶ 90–95. The Complaint asserts Plaintiff took out five federal student loans through the United States Department of Education to finance her bachelor's degree in nursing from the University of Texas at Arlington. *Id.* ¶¶ 29–31. These federal student loans were serviced by the Higher Education Loan Authority of the State of Missouri ("MOHELA"), which submits student loan data to consumer reporting agencies on a monthly basis. *Id.* ¶¶ 32–35. On October 21, 2023, Plaintiff submitted a lump-sum payment of $14,613 to MOHELA for the remaining balance of her student loans. *Id.* ¶¶ 38–40. However, MOHELA failed to credit her account properly. *Id.* ¶¶ 41–45. As a result, four of her student loans still showed balances totaling $12,036.00. *Id.* ¶¶ 47–48. These factually inaccurate balances were then reported to Experian. *Id.* ¶¶ 48, 68.

Beginning in February 2024, Plaintiff contacted MOHELA to correct the discrepancy. *Id.* ¶ 49. MOHELA acknowledged the discrepancy in an email and promised the account would be "rebuilt" to correct the mistake. Doc. 1-1 at 1. On August 29, 2025, Plaintiff sent a letter ("Dispute Letter") to Experian disputing her reported credit score. Doc. 1-3 at 1–20. The Dispute Letter—which included proof of payment and an email from MOHELA acknowledging the mistake— alerted Experian to the inaccuracies contained in Plaintiff's credit report and requested a formal investigation pursuant to 15 U.S.C. § 1681i(a). *Id.* Experian responded to the Dispute Letter in September 2025 and stated that it would continue to report the factually inaccurate information to prospective creditors. Doc. 1 ¶ 61. Plaintiff subsequently applied for a

---

[1] The Complaint also named four additional co-defendants: Equifax Information Services, LLC ("Equifax"); Trans Union, LLC ("Trans Union"); the United State Department of Education ("ED"); and the Higher Education Loan Authority of the State of Missouri ("MOHELA"). *See* Doc. 1. These co-defendants have since been dismissed from the lawsuit. *See* Docs. 71; 78; 86.

Capital One credit card and alleges she was offered worse terms because of the false information on her Experian credit report. *Id.* ¶¶ 68–75.

Experian answered the Complaint and asserted the affirmative defense of arbitrability. Doc. 12 at 18. Now, following limited discovery, Experian moves to compel arbitration. *See* Doc. 62. Experian states several reasons to support its Motion to Compel Arbitration. Specifically, on July 31, 2017, Plaintiff successfully enrolled in CreditWorks—a credit monitoring service offered by Experian Consumer Services ("ECS"). Doc. 62 at 5. To enroll in CreditWorks, Plaintiff was required to complete two forms. The first form required her to enter her personal information and click the "Submit and Continue" button. Doc. 62-1 ¶ 3. The second form required Plaintiff to enter her social security number, date of birth, and a username and password. *Id.* ¶ 4. The second form also contained the following disclosure: "By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement[.]" ("2017 Terms of Use Agreement"). *Id.* ¶ 4. The phrase "Terms of Use Agreement" was offset in bold, blue text and hyperlinked to the full text of the agreement. *Id.*

The 2017 Terms of Use Agreement contains an arbitration agreement ("2017 Arbitration Agreement"), which applies to ECS, its "affiliates," and "affiliated website[s]"—including Experian. Doc. 62-4 at 2–4, 7–8. The 2017 Arbitration Agreement expressly excludes "any dispute . . . arising out of the Fair Credit Reporting Act (FCRA)," but delegates all questions regarding the scope and enforceability of the agreement to the arbitrator. Doc. 62-4 at 7–8. The 2017 Terms of Use Agreement also contains a section titled "Amendments," which states:

> This agreement may be updated from time to time. . . . Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement. Modifications take effect as soon as they are posted to this Website (or any of the Websites, to the extent applicable to you), delivered to you, or reasonably made available to you in writing by ECS.

Doc. 62-4 at 4. Plaintiff was required to accept the 2017 Terms of Use to successfully enroll in CreditWorks. Doc 62-1 ¶ 3.

On December 5, 2024, Experian updated its terms of use ("2024 Terms of Use Agreement"). As relevant here, the 2024 Terms of Use Agreement differs in one important way—it provides that claims arising under the FCRA are subject to arbitration:

> The agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether based in contract, tort, statute (including, without limitation, the Fair Credit Reporting Act and Credit Repair Organizations Act), for fraud, misrepresentation ort any other legal theory . . . [and] claims arising out of any aspect of the relationship between us arising out of any Service or Website, claims that arose before this or any prior Agreement[.]

Doc. 62-6 at 9. Experian informed CreditWorks members of these changes to its terms of use via email on December 22, 2024. That email stated:

> The Experian Consumer Services terms of use and privacy policy have been updated to reflect some changes to our information practices and to give you the opportunity to opt out of certain information sharing. . . . We encourage you to read the updated ConsumerInfo.com, Inc. Privacy Policy and Terms of Use Agreement[.]

Doc. 62-5 (emphasis in original). The email contained a hyperlink to the full text of the terms of use, which were also available online. Doc. 81 at 10. Experian did not produce the specific email it sent to Plaintiff. Instead, it produced a template of the email retained under the name "Amanda" that Experian sent to every CreditWorks member on December 22, 2024. Doc. 62-5 at 2; Doc. 62-1 ¶ 8 n.1. According to Experian, "[t]he body of the e-mail that was sent to Plaintiff would have been identical . . . with the exception that the e-mail would have said 'Korie, we've updated our Terms of Use and Privacy Policy' in the body, and it would have had Plaintiff's Membership ID." Doc. 62-8 ¶ 8 n.1. Thereafter, Plaintiff continued to use CreditWorks. Doc. 62-1 ¶ 8.

In support of its Motion to Compel Arbitration, Experian relies principally on a sworn declaration from Dan Smith, who has served as the Senior Director of Business Governance for ECS since 2010. *See* Doc. 62-1 ("Smith Declaration"). Mr. Smith is familiar with the enrollment process and terms of use governing CreditWorks. *Id.* ¶ 1. He is also familiar with Experian's "electronic databases that store consumer enrollment information, "the date and time of the consumer's acceptance of the Terms of Use," and "internal records that document consumers' ongoing use of their CreditWorks account, including when a consumer logs into their account[.]" *Id*. According to Mr. Smith, he reviewed these online databases to confirme that Plaintiff successfully enrolled in CreditWorks in 2017 and continued using the account after Experian updated its terms of use in December 2024. *Id.* ¶ 3.

Plaintiff opposes the Motion to Compel Arbitration. *See* Doc. 75. Additionally, Plaintiff has moved to both strike and stay briefing on the Motion to Compel to conduct limited discovery on the formation of the arbitration agreement. *See* Doc. 67; Doc. 68. Plaintiff's Motion to Stay includes her own declaration, which states:

1. I have no awareness of having enrolled in CreditWorks at any time.
2. I have no awareness of having agreed to arbitrate my claims in this lawsuit.
3. I searched my email messages and found no record of my enrollment in or use of CreditWorks.

Doc. 68-1 at 1 ("Plaintiff's Declaration"). Experian has also moved for a Motion for Protective Order pending resolution of the Motion to Compel. *See* Doc. 63.

## *II. Analysis*

### A. Motion to Strike

The Court begins with Plaintiff's Motion to Strike. *See* Doc. 67. Plaintiff's Motion to Strike alleges that Experian violated D.N.M.LR-Civ. 7.1(a) and failed to confer in good faith by

refusing to provide counsel with a copy of the Motion to Compel before it was filed. *Id.* at 1. The Court disagrees.

Local Rule 7.1(a) provides:

> Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied.

Importantly, Local Rule 7.1(a) does not state that a nonconforming motion "must" be denied. Rather, it states the motion "may" be denied. Thus, under Local Rule 7.1(a), the Court retains discretion to reach the merits of a nonconforming motion based on the facts and circumstances unique to each case. *See, e.g., United States v. 16 Mounts, Rugs, and Horns Protected by the Endangered Species Act*, 124 F. Supp. 3d 1174, 1176 (D.N.M. 2015) ("[B]ecause dismissal for failure to comply with this rule is discretionary, the Court will excuse the misapprehension and proceed to the merits of the Motion.").

Here, the Court has no trouble concluding that Experian's Motion to Compel Arbitration met the requirement to confer in good faith under Local Rule 7.1(a). After Experian informed Plaintiff by email that it planned to move for arbitration, the parties met telephonically to discuss the matter on August 28, 2026. Doc. 67 at 1–2. And prior to filing the motion, Experian shared a copy of the operative Terms of Use Agreement via email and requested Plaintiff's position on the motion. Doc. 67-1 at 1; *see also* Doc. 62 at 1 ("[Experian] sought Plaintiff's position on this motion. . . . Although Plaintiff originally said she might consent to this motion, she later changed her position to oppose."). Experian refused to provide Plaintiff with a copy of the motion before filing on the basis it was "work product and subject to change." Even so, nothing more was required under the Local Rule. Plaintiff's Motion to Strike is denied.

B. <u>Motion to Compel Arbitration</u>

*1. <u>Standard of Review</u>*

The Federal Arbitration Act ("FAA") establishes a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (internal quotations omitted); *see also United Tech. & Res., Inc. v. Dar Al Islam*, 1993-NMSC-005, ¶ 11, 115 N.M. 1 ("The legislature and the courts of New Mexico have expressed a strong policy preference for resolution of disputes by arbitration." (internal quotation marks omitted)). Section 2 of the FAA provides that written agreements to submit to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA, in turn, permits an "aggrieved" party to petition "for an order directing that such arbitration proceed in the manner provided for in such agreement." § 4.

Motions to compel arbitration are evaluated similarly to motions for summary judgment. *Hancock v. Am. Tel. and Tel. Co., Inc.,* 701 F.3d 1248, 1261 (10th Cir. 2012). Under this standard, "the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014). The burden then shifts to the nonmovant to demonstrate a genuine dispute of material fact concerning the agreement's validity or enforceability. *Id.* Like a motion for summary judgment, a court "gives the opposing arbitration the benefit of all reasonable doubts and inferences[.]" *BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017). Where, as here, the parties dispute the existence of an agreement to arbitrate, a court may grant a motion to compel arbitration if "there are no genuine issues of material fact regarding the parties' agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1284 (10th Cir. 1997). If there is a genuine dispute of material fact, the

court must "proceed summarily to trial" to determine whether an arbitration agreement exists. 9 U.S.C. § 4; *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014).

Courts analyze a motion to compel arbitration in two steps. First, the court must determine whether a valid agreement exists that provides the moving party with the right to compel arbitration. *Cavlovic v. J.C. Penny Corp. Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018). Second, if a valid arbitration agreement exists, the court then determines whether it covers the disputed issue. *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) (citation omitted). The Court addresses each step in turn.

1. *The 2024 Arbitration Agreement contained in the 2024 Terms of Use Agreement is valid and enforceable.*

Experian argues it may compel arbitration as a matter of law under the 2024 Terms of Use Agreements, which contains an arbitration agreement and delegates all questions regarding their scope and enforceability to the arbitrator. Doc. 62 at 8–11; Doc. 81 at 1. The Court agrees. Although Plaintiff counters that she has no recollection and no record of enrolling in CreditWorks, *see* Doc. 75 at 5–7; Doc. 68-1, these statements are not sufficient to create a genuine dispute of material fact. The 2024 Arbitration Agreement, which expressly delegates questions of arbitrability to the arbitrator, therefore controls.

The "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). Although the FAA establishes a "liberal federal policy favoring arbitration agreements," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (internal quotations omitted). Nevertheless, "this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). As such, "the question of whether the parties agreed to arbitrate is to be decided by the court, not

the arbitrator." *AT & T Techs. v. Comm. Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 13, 140 N.M. 266 ("It is for the trial court, and not the arbitrator, to decide whether a valid agreement to arbitrate exists."). "To determine whether the agreement to arbitrate is valid, courts look to general state contract law[.]" *Salazar v. Citadel Commc'ns Corp.*, 2004-NMSC-013, ¶ 8, 135 N.M. 447. In New Mexico, a valid contract "must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9, 121 N.M. 728.

To start, the Court finds that Plaintiff originally agreed to the 2017 Arbitration Agreement by enrolling in CreditWorks, which required her to accept the 2017 Terms of Use Agreement.[2] *See* Doc. 62-1. Under New Mexico law, that is all that was required to form an enforceable contract. *See Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 7, 115 N.M. 665 ("[T]o be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent.").

Applying the same legal principles, the Court further concludes that the 2024 Arbitration Agreement, which supersedes the 2017 Arbitration Agreement and controls for purposes of this dispute, is also valid and enforceable.[3] It does so for three reasons. First, when Plaintiff

---

[2] Courts have routinely relied on declarations by Mr. Smith and other records custodians to demonstrate how consumers manifested assent to Experian's arbitration provision. *See Hanson v. Experian Info. Sols. Inc.*, No. 1:23-cv-4564-MHC-CMS, 2024 WL 2974160, at *3 (N.D. Ga. June 12, 2024) (collecting cases)), *R&R adopted*, 2024 WL 3509482 (N.D. Ga. July 22, 2024). Because Plaintiff does not deny or otherwise contradict Experian's factual account, the Smith Declaration is "sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

[3] Experian argues the Court "need not choose between the 2017 and 2024 Terms" because "Plaintiff formed an agreement to arbitrate with a delegation clause" and "the arbitrator decides the rest." Doc. 81 at 9–11. Experian's argument effectively asks the Court to adopt the principle that once the parties formed the 2017 Arbitration Agreement, "any dispute over whether that agreement was later modified or superseded is [also] a gateway question that has been delegated to the arbitrator." *Williams v. Experian Info. Sols. Inc.*, No. 23-cv-1076, 2024 WL 3876171, at

originally enrolled in CreditWorks, the 2017 Terms of Use Agreement specifically provided that the "agreement may be updated from time to time" and that Plaintiff's "access or use [of] any of the Services or Websites . . . signifies … acceptance" of those updated terms. Doc. 62-4 at 4.

Second, Experian sent an email to all CreditWorks members on December 22, 2024, stating: "The Experian Consumer Services terms of use and privacy policy have been updated to reflect some changes to our information practices and to give you the opportunity to opt out of certain information sharing." Doc. 62-5. That email also included a hyperlink to the full text of the 2024 Terms of Use Agreement and is therefore sufficient to satisfy the requirements of the 2017 Terms of Use Agreement, which stated that any changes in the terms of use must be "delivered to you, or reasonably made available to you in writing[.]" Doc. 62-4 at 4. And third, Mr. Smith's unrebutted testimony indicates that Plaintiff continued to use CreditWorks . . . after receipt of that e-mail notification," thereby accepting the 2024 Terms of Use Agreement and 2024 Arbitration Agreement. Doc. 62-1 ¶ 8. As a result, the 2024 Arbitration Agreement is enforceable and controls for purposes of this dispute.

Plaintiff raises two primary arguments against the validity of the 2024 Arbitration Agreement—one legal and one factual. *See* Doc. 75 at 8–11. First, Plaintiff counters that she has "no awareness of having enrolled in CreditWorks" and could not locate any email messages confirming her enrollment in the service. Doc. 68-1 at 1; *see also* Doc. 75 at 8 ("Plaintiff cannot say with certainty whether she did or not . . . enroll[] in CreditWorks[.]"). On this basis, Plaintiff asks the Court to find there is a genuine dispute of material fact regarding contract formation.

---

*16 (D. Ariz. Aug. 20, 2024). That is a bridge too far. Although the 2017 and 2024 Terms of Use Agreements both contain delegation clauses, the validity of the 2024 Arbitration Agreement—like the 2017 Arbitration Agreement—is a threshold matter the Court must decide itself. *Richard v. Allianz Life Ins. Co. of North Am.*, 2003-NMCA-001, ¶ 9, 133 N.M. 229.

Doc. 75 at 5. But these statements—even in the light most favorable to Plaintiff—do not constitute a denial or otherwise create a genuine dispute of material fact. *See Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Co. 2019) ("[G]eneral denials and statements that a user does not recall visiting a website or agreeing to arbitrate are insufficient to defeat arbitration."); *see also Boisvert v. Experian Inf. Sols., Inc.*, 2026 WL 1079694, at *1 (9th Cir. Apr. 21 2026) ("[F]ailure to remember is not enough to create a genuine dispute of fact."). Plaintiff's lack of recollection, however sincere, does not establish a genuine material dispute of fact regarding acceptance of the 2024 Terms of Use Agreement and formation of the 2024 Arbitration Agreement.

Plaintiff's second argument—that Experian's notice was legally insufficient to modify the 2017 Terms of Use Agreement—also fails. *See* Doc. 75 at 8–11. In support of this argument, Plaintiff relies on *Durphy v . Experian Inf. Sols., Inc.*, No. 24-cv-468-MJP, 2025 WL 289071 (W.D. Wa. Jan. 24, 2025). But *Durphy* is distinguishable. In that case, "nothing in [Experian's] . . . declaration explain[ed] why the email refer[ed] to 'Frank,' and not [the plaintiff]." *Id.* at *2. And unlike this case, the large, bolded, and offset header of the email in *Durphy* did not provide reasonable notice of the updated terms under Washington law because it only stated: "Frank, check out your latest updates." *Id; see also id.* at *5 ("[T]he notice about changes to the Terms of Use is buried in the email, nestled in a visually small area between brighter colored and easier-to-read information about different services that had nothing to do with the Terms of Use."). Here, by contrast, the notice contains large, bolded, and offset text that prominently states: "[W]e've updated our terms of use and privacy policy[.]" Doc. 62-5 at 2.

Moreover, while Experian did not produce the specific email it sent to Plaintiff on December 22, 2024, it did produce the "template" email retained under the name "Amanda" that it sent to every CreditWorks member. Doc. 62-5 at 2. And as the Smith Declaration explains, "[t]he body of the e-mail that was sent to Plaintiff would have been identical . . . with the exception that the e-mail would have said 'Korie, we've updated our Terms of Use and Privacy Policy' in the body, and it would have had Plaintiff's Membership ID." Doc. 62-8 ¶ 8 n.1. *See Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1348 (11th Cir. 2025) ("A declaration that sets forth specific facts based on personal knowledge, describes the enrollment process, and appends the operative contract is competent evidence sufficient to satisfy Experian's initial burden.").

The Court therefore concludes that the parties formed a valid contract to arbitrate under the 2024 Terms of Use Agreement, which gives Experian the right to compel arbitration under Section 2 of the FAA.

2. *The 2024 Arbitration Agreement expressly delegates the issue of arbitrability to the arbitrator.*

Turning to the second step—whether Plaintiff's FCRA claims fall within the scope of the arbitration agreement—the Court concludes that the 2024 Arbitration Agreement expressly delegates the issue of arbitrability to the arbitrator. It is therefore for the arbitrator, and not the Court, to decide this second issue.

Questions of arbitrability encompass two types of disputes: (1) "disputes about whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement;" and (2) "disputes about who should have the primary power to decide whether a dispute is arbitrable. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (citation modified). Although "any doubts concerning the scope of arbitrable issues should be resolved in

favor of arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24–25 (1983), courts "presume that the parties intend courts, not arbitrators" to decide whether the parties have delegated the more fundamental question of arbitrability to the arbitrator. *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014). In such cases, courts require "clea[r] and unmistakabl[e] evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT & T Techs.*, 475 U.S. at 649). But where an arbitration agreement expressly "delegates the arbitrability question to an arbitrator, a court may not override the contract, even if the court thinks that the arbitrability claim is wholly groundless." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 64 (2019).

Here, the 2024 Arbitration Agreement's delegation clause states, in relevant part:

> All issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding Arbitrability . . . [and], (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions[.]"

Doc. 62-6 at 10. Given this unequivocal language, the Court concludes that the arbitrator must decide whether Plaintiff's FCRA claims fall within the scope of the 2024 Arbitration Agreement.

C. Stay Pending Arbitration

Finally, Experian asks this Court to stay these proceedings pending arbitration. *See* Doc. 62 at 11. Section 3 of the FAA provides that, when any issue in a suit is subject to arbitration, the court:

> shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 479 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Because the Court has determined that

Plaintiff's FCRA claims are subject to arbitration, the Court agrees that a stay pending arbitration is appropriate.

### *III. Conclusion*

For the forgoing reasons, it is ORDERED that:

1. Experian's Motion to Compel Arbitration, Doc. 62, is GRANTED and Experian's Motion for Protective Order, Doc. 63, is DENIED as moot.
2. Plaintiff' Motion to Strike, Doc. 67, and Motion to Stay, Doc. 68, are DENIED.
3. Experian's request for a stay pending arbitration is GRANTED. The case is hereby STAYED and the parties shall file a joint report regarding the status of arbitration within thirty (30) days of the resolution of the claims in arbitration.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales____________________
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.